STATE of Missouri ex rel. Lonnie
SUITOR, Relator,

v.

Honorable Gregory STREMEL, Associate
Circuit Judge, 40th Judicial Circuit, New-
ton County, Missouri, Respondent.

No. 21898.

Missouri Court of Appeals,
Southern District,
Division One.

April 30, 1998.

Lonnie Suitor, pro se.

Greg R. Bridges, Pros. Atty., Neosho, for
Respondent.

GARRISON, Presiding Judge.

Lonnie Suitor ("Relator") seeks an order
in mandamus to compel Respondent, a New-
ton County Circuit Court judge, to dismiss a
pending arson charge against him. He con-
tends that the Agreement on Detainers (the
"Agreement"), § 217.490,[1] requires the dis-
missal because he was not brought to trial
within 180 days after his request for a final
disposition of the charge. This court issued
a preliminary order in mandamus, in which

1. All statutory references are to RSMo 1994, unless otherwise indicated.

we directed Respondent to file an answer to Relator's petition. Respondent did so, and argues in his answer that Relator is not entitled to a dismissal of the arson charge, because he did not follow the proper statutory procedure.

■ On March 15, 1996, Respondent issued a warrant for Relator's arrest, which recited that he had been charged in Newton County, Missouri with arson in the second degree pursuant to § 569.050. On April 16, 1996, an Oklahoma court found him guilty of an unrelated charge and sentenced him to a twenty-five-year prison term, and he is now incarcerated in an Oklahoma state prison. On May 21, 1996, Relator filed a "Motion for Speedy Trial or Dismissal of Charges" in Newton County concerning the arson charge.[2] The Newton County prosecutor responded on July 15, 1996 by sending his "Acceptance of Temporary Custody Offered in Connection with a Prisoner's Request for Disposition of a Detainer" to the warden of the Oklahoma prison in which Relator is incarcerated. In this document the prosecutor recites that it is "[i]n response to [the warden's] letter of May 14, 1996, and offer of temporary custody regarding [Relator] who is presently under indictment, information or complaint in the Associate Circuit Court [sic] of Newton County, Missouri." The prosecutor further states that "I accept temporary custody and that I propose to bring [Relator] to trial ... within the time specified in Article III(a) of the [Agreement];" and gives notice of his intention to take custody of Relator on August 8, 1996. The "Acceptance" also contains a certificate executed by Respondent.

On July 19, 1996, the Missouri "Detainer Administrator" wrote the governor of Oklahoma with copies to the prosecutor as well as the warden of the Oklahoma prison, enclosing a form signed by the prosecutor designating the persons authorized to transport Relator to Newton County. That form also states that Relator would be taken into temporary custody by Missouri authorities on August 8, 1996.

Missouri officials apparently did not take custody of Relator on August 8, 1996 as planned. On January 23, 1997, Relator filed a "Motion to Dismiss Indictment/Information" invoking the Agreement, and requesting that the circuit court dismiss the pending charge against him. In the motion, he notes the filing of his "Motion for Speedy Trial or Dismissal of Charges," the prosecutor's signed acceptance of temporary custody, and the expiration of the 180 day period within which he was to have been brought to trial.

The circuit court did not dismiss the charge against Relator, and he filed a petition for a writ of mandamus with this court. We issued a preliminary order in mandamus, to which Respondent filed an answer. Respondent contends that Relator failed to follow the procedure necessary to invoke his statutory right to a dismissal of the charge. Relator argues that his compliance with the Agreement was sufficient. For the reasons hereafter described, we make our preliminary order in mandamus absolute.

■ The Agreement applies to prisoners incarcerated in another jurisdiction who are subject to detainers originating in Missouri. *State ex rel. Clark v. Long*, 870 S.W.2d 932, 936 (Mo.App. S.D.1994). A similar statute, the Uniform Mandatory Disposition of Detainers Law (the "UMDDL"), §§ 217.450–217.485, applies to Missouri prisoners against whom untried charges are pending in Missouri. *Id.* Both laws provide a mechanism for the prompt disposition of detainers. *State ex rel. Kemp v. Hodge*, 629 S.W.2d 353, 354–55 (Mo.banc 1982).

Respondent alleges in his answer to the preliminary order in mandamus that Relator is not entitled to a dismissal of the pending charges because he failed to comply with § 217.455 of the UMDDL. We note first that the UMDDL does not apply to Relator because he is not imprisoned in Missouri. However, the Agreement, on which Relator

---

**2.** Both Relator and Respondent assert that Relator filed this motion on May 21, 1996, and Respondent admits that it bears a file stamp with that date. This is not substantiated by the record filed in this court. Where the parties agree in their briefs concerning a fact, however, this court may consider it as though it appeared in the record. *State ex rel. Missouri Highway and Transportation Commission v. Sweeney*, 933 S.W.2d 908, 910 (Mo.App. S.D.1996).

relies, sets forth a comparable procedure. We assume that Respondent actually intends to contest Relator's compliance with the Agreement.

The Agreement delineates the procedure a prisoner must follow to invoke his rights under the statute:

### ARTICLE III

1. Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

2. The written notice and request for final disposition referred to in paragraph 1 of this article shall be given or sent by the prisoner to the warden, director of the division of adult institutions or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

§ 217.490, Art. III. Respondent argues that Relator is not entitled to a dismissal of the arson charge because he failed to deliver his request to the official having custody of him, and consequently, no director's certificate was furnished to the prosecutor and court certifying the term of commitment under which Relator was being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility, and any decisions of the state parole agency concerning Relator. He also contends that the request was not sent to the court and prosecutor by registered or certified mail.

■ Missouri courts have typically construed the Agreement to "place the onus of compliance upon the officials of the incarcerating and receiving states, rather than upon the prisoner. The officials are generally in a better position to advance the case and to secure cooperation from each other than is the prisoner." *State v. Walton*, 734 S.W.2d 502, 503 (Mo.banc 1987) (citing *State ex rel. Saxton v. Moore*, 598 S.W.2d 586, 590 (Mo. App. W.D.1980)). Thus, if the prisoner makes a good-faith effort to invoke the Agreement, and he omits nothing essential to the statute's operation, his failure to comply strictly with its requirements will not be fatal to his claim. *Saxton*, 598 S.W.2d at 590.

■ While the Agreement clearly provides that the prisoner is responsible for delivering his request for disposition of a detainer to the official having custody of him, it is equally clear that this official is in turn charged with the duty to forward the request, along with the accompanying documentation, to the appropriate prosecutor and court via certified or registered mail, return receipt requested. *State v. Buckles*, 636 S.W.2d 914, 921 (Mo. banc 1982), *overruled on other grounds, State v. Waller*, 816 S.W.2d 212 (Mo.banc 1991); *State v. White*, 706 S.W.2d 498, 504 (Mo.App. W.D.1986); *State v. Smith*, 686 S.W.2d 543, 546 (Mo.App. S.D.1985). When an irregularity in compliance with the Agreement results from the failure of the official having custody of the prisoner to perform the official's duty according to the statute, and does not result in the omission of an "essential" element of compliance with the statute, it will not frus-

trate the prisoner's attempt to invoke his rights. *See Smith*, 686 S.W.2d at 546–47; *Saxton*, 598 S.W.2d at 589–90.

Here, Respondent does not contend that Relator's "Motion" was, itself, insufficient to invoke the procedures and benefits of the Agreement. In fact, the prosecutor treated it as having that effect by signing the "Acceptance Of Temporary Custody In Connection With A Prisoner's Request For Disposition Of A Detainer," and by acknowledging in that form that he proposed to bring Relator to trial "within the time specified in Article III(a)of the Agreement on Detainers." Relator likewise does not argue that the prosecutor and court failed to receive a copy of the request. The record before us contains several indications that both the prosecutor and court did, in fact, receive copies of Relator's request. Respondent's answer acknowledges that the "Motion" was filed with the court and made available to the prosecutor on or about the date of its filing, May 21, 1996. Both the prosecutor and Respondent signed the "Acceptance Of Temporary Custody" directed to the warden of the prison where Relator is incarcerated.

Respondent contends that, contrary to the UMDDL (construed by us actually to refer to the Agreement), Relator's "Motion" "was not delivered to the director of Relator's place of incarceration and as a result, the motion filed by Relator did not contain the director's certificate requirements . . ." This too is at least partially contradicted by the record. Relator's "Certificate" attached to the "Motion" recites that a copy was mailed to the records officer of Relator's place of incarceration. Respondent does not contest that this person was an appropriate recipient of Relator's request. Additionally, the "Acceptance" executed by the prosecutor is directed to the warden of this institution and recites that it is in response to the warden's letter of May 14, 1996 and his offer of temporary custody of Relator.

Even if Respondent were correct in arguing that Relator's putative failure to deliver his request to the official having custody of him and that official's failure to provide the required certificate and to mail it by certified or registered mail caused his attempt to invoke the Agreement to be ineffective, we observe that the 180 day time period can be commenced by other means. In *Saxton*, 598 S.W.2d at 591–92, the court held that the failure to provide notice to the "appropriate court" was waived when the prosecutor signed and delivered a "Prosecutor's Acceptance Of Temporary Custody In Connection With A Prisoner's Request For Disposition Of A Detainer" similar to the one signed and delivered by the prosecutor in the instant case. The court further held that the prosecutor raised no objection to the procedure followed by the prisoner, but rather formally declared the prosecutor's acceptance of the prisoner's custody for the purposes of trial and also declared an intention to bring him to trial within the time allowed by the Agreement. *Id.* The same is true in the instant case. The *Saxton* court concluded that "[t]he prosecutor thus waived the statutory notice to the court, and accepted what the prisoner had done as sufficient to invoke the Agreement on Detainers." *Id.* at 592.

This court found *Saxton* to be "compelling" in *Smith*, 686 S.W.2d at 547, on the issue of whether a prosecutor's execution of an "Acceptance of Temporary Custody Offered in Connection with a Prisoner's Request for Disposition of a Detainer" constituted a waiver of a prisoner's failure to notify the appropriate court. In doing so, the court observed that the prisoner intended to invoke the Agreement, that the irregularity in compliance with the Agreement was that of the warden, and that the prisoner received a copy of the "Acceptance" which made no reference to any irregularity. *Id.*

In *State v. Jenkins*, 778 S.W.2d 815 (Mo. App. E.D.1989), the court held that the 180 day period was not initially commenced because of the prisoner's failure to cause a notice of his intention to invoke the Agreement to be sent to the prosecutor. *Id.* at 816–17. However, the court also held that the execution and mailing of an agreement to accept temporary custody of the prisoner would also cause the 180 period to begin running. *Id.* at 817.

One of the cases Respondent cites in its answer also contains language supporting the concept of waiver by the execution and deliv-

ery of such an acceptance. In *Yagovane v. State*, 923 S.W.2d 522, 523–24 (Mo.App. W.D. 1996), the court held that a prisoner may not omit essential requirements of the Agreement, such as notice to the prosecutor and the appropriate court. It also indicated, however, that even if notice was insufficient, the 180 day time limit may commence when the prosecutor later gives notice of an intention to take the prisoner into custody for the purposes of a trial on the pending charges. *Id.* at 524.

■ Relator has shown that he delivered his request for disposition of the detainer against him to an official having custody of him, that the Newton County prosecutor and circuit court received copies of his request, and that 180 days elapsed between his request and his motion for dismissal. In the instant case, we hold that the record indicates substantial compliance with the Agreement by Relator without the omission of "essential" requirements of the statute. Moreover, we are persuaded that the failures complained of by Respondent were waived by the prosecutor's "Acceptance." Accordingly, we hold that the trial court has lost jurisdiction over the charge of arson in the second degree pending in Newton County under Case No. 496–536 F except to dismiss that charge.

The preliminary order in mandamus is made absolute.

PREWITT and CROW, JJ., concur.